**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ABEL BUSTOS, a/k/a Gavino Toledo,

    Defendant-Appellant.

No. 07-5157
(D.Ct. No. 4:07-cr-00028-GKF-2)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BRISCOE**, **BRORBY**, and **EBEL**, Circuit Judges.

_____

Defendant-Appellant Abel Bustos appeals his convictions on grounds the
district court committed plain error in providing defective verdict forms which
impermissibly conditioned a "not guilty verdict" on a "beyond a reasonable
doubt" finding and abused its discretion by instructing the jury to consider his
immigration status in conjunction with the charge of being in possession of a
firearm in furtherance of a drug trafficking crime. We exercise jurisdiction
pursuant to 28 U.S.C. § 1291 and affirm Mr. Bustos's convictions.

_____

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. Preliminary Background

Following a multiple count indictment charging him and his cousin, Epifanio Bustos, with numerous drug related offenses, Abel Bustos (Mr. Bustos) pled not guilty to the three counts in the indictment pertaining to him, including possession of at least fifty grams of a substance containing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) (Count 1); possession of a firearm and ammunition in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); and being an illegal alien in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(5) (Count 5). A trial followed, in which the jury found Mr. Bustos guilty of Count 5 for being an illegal alien in possession of a firearm and ammunition. However, the jury could not reach a verdict on the other two counts, leading to a second trial on Counts 1 and 3. At the second trial, the jury found Mr. Bustos guilty of both Counts 1 and 3. The district court sentenced Mr. Bustos to sixty-three months imprisonment on Counts 1 and 5, to be served concurrently, with a term of supervised release of five years, and a fine of $1,000 on Count 1; and sixty months imprisonment on Count 3, to be served consecutively to the other counts, with a term of supervised release of three years.

While Mr. Bustos's first appeal issue is premised on the verdict forms provided to the jury at both trials as they apply to each count on which he was

-2-

convicted, the parties rely primarily on the evidence presented at the second trial to support their arguments on that issue. In contrast, the second appeal issue is premised solely on the jury instructions from the second trial as they relate to Count 3. We have compared the relevant evidence presented in both trials and note the same witnesses presented substantially the same testimony. Where relevant, we note facts applicable exclusively to each trial as they pertain to the separate count or counts on which Mr. Bustos was convicted.

## II. Factual Background

At both jury trials the government offered the testimony of Tulsa, Oklahoma Police Officer Greg McGowan, who conducted the January 17, 2007 traffic stop involving Mr. Bustos. Officer McGowan testified he stopped the driver of a Ford Mustang, Epifanio Bustos, for failure to wear a seatbelt. Because the driver did not possess a valid driver's license, Officer McGowan asked both the driver and his passenger, the defendant, Mr. Bustos, for their names; Mr. Bustos falsely identified himself as "Gavino Toledo." After learning Epifanio Bustos had an outstanding misdemeanor arrest warrant, Officer McGowan radioed for assistance. Once Tulsa Police Officer Steve Castleberry arrived, the officers instructed Epifanio Bustos to step out of the car and arrested him on the outstanding warrant.

Officer McGowan then instructed Mr. Bustos to exit the car and began a search of the vehicle, where he discovered a loaded pistol and a box containing numerous .40-caliber rounds of ammunition under the driver's seat. In the back seat he also found a gun case containing a digital scale with a plastic baggie containing a white crystal-like substance. It was later determined the baggie found in the vehicle held 52.92 grams of a substance containing a detectable amount of methamphetamine.[1]

Officer Castleberry also testified, explaining he searched the passenger's side of the vehicle and discovered a loaded .40-caliber semi-automatic pistol under the front passenger's seat as well as thirteen rounds of ammunition.[2] Mr. Bustos was then arrested and a search of his person resulted in the discovery of $810 in cash and a Mexican identification card in the name of Gavino Toledo.

Officer Castleberry and another officer, Frank Khalil, who speaks Spanish, were present during a subsequent interview of Mr. Bustos and offered the

---

[1] At the first trial, a forensic scientist testified that the net amount of methamphetamine contained in the baggie found in the vehicle was 52.92 grams; at the second trial, the parties stipulated 52.92 grams was the net amount found in the vehicle.

[2] At both trials, the pistol under the passenger's seat was identified as a .40 S&W caliber Smith and Wesson pistol, model SW40VE, serial number PDV6436, and the ammunition as thirteen rounds of Remington Peters .40 S&W caliber JWC ammunition.

following evidence.  They testified Mr. Bustos was verbally read his *Miranda* rights in Spanish and provided a document with his *Miranda* rights printed on it in Spanish, which Mr. Bustos signed.  Mr. Bustos acknowledged he understood his rights and that he was waiving those rights.  According to the officers, Mr. Bustos clearly understood the questions and discussion in the subsequent interview, which was conducted primarily in English, and responded to the questions posed without any hesitation or confusion.  During the interview, Mr. Bustos stated:  (1) his real name was Abel Bustos; (2) he was an illegal alien; (3) he and Epifanio were in the drug business together; (4) the drugs found in the vehicle belonged to them; (5) they purchased approximately two ounces of methamphetamine a couple of days prior to their arrest; and (6) they typically packaged and sold their drugs in $20 baggies (i.e., each containing $20 worth of methamphetamine).

During the interview, Mr. Bustos also admitted the semi-automatic pistol found under the front passenger's seat belonged to him, and, at the time of the traffic stop, he and Epifanio each placed their guns underneath their seats. Finally, during his interview, Mr. Bustos explained to the officers that his Mexican identification card containing the name Gavino Toledo was a fake.

At the second trial, Officers Castleberry and Khalil testified as to their

considerable training and experience in narcotics investigations. Based on that training and experience, they stated their opinion that possession of more than two ounces of methamphetamine, together with digital scales, firearms, false identification to avoid detection, and a large amount of cash in the amount of $810, indicated Mr. Bustos was engaged in a scheme to illegally distribute drugs.

At both trials Mr. Bustos testified on his own behalf, admitting he was born in Mexico in 1977, came to the United States in 1989, and is an illegal alien. He also gave evidence he was educated in the United States, where he learned to read and write in English and that he speaks both Spanish and English, but he reads and writes better in English and speaks better in Spanish. He also stated he stayed with his girlfriend, Rosa Marian Soto-Ramos, in a hotel for a few days before going to his aunt's house on January 13 or 14, 2007. According to him, he left his aunt's house on January 17 when Epifanio gave him a ride to pick up a cell phone and they were stopped by the police. At the second trial, Mr. Bustos specifically testified he had not been alone with Epifanio any time in the five days preceding his arrest, never left the hotel by himself, and did not leave his aunt's house until January 17, 2007, thereby intimating he did not have the opportunity to purchase drugs a few days prior to his arrest, as allegedly stated in his interview.

At both trials, Mr. Bustos also testified he was unaware guns or drugs were in Epifanio's car until the traffic stop, when Epifanio told him. He also denied telling police officers he was dealing drugs with his cousin or sold $20 drug baggies. He stated that at the time of the traffic stop he picked up a gun that was between the seats and put it under his seat because he was nervous. More specifically, at the first trial, he testified that he briefly possessed the gun when he picked it up and put it under the seat and stipulated that the gun was manufactured outside the state and that it traveled in interstate commerce. At the second trial, he stipulated the pistol and thirteen rounds of .40-caliber ammunition were possessed by him on January 17, 2007, and that the firearm was functional and capable of firing a projectile. Also at the second trial, he testified his fake identification card was for the purpose of obtaining employment and admitted he understood and waived his *Miranda* rights and understood the questions he was asked in English during his interview.

Ms. Soto-Ramos also testified at both trials and stated that beginning on January 11, 2007, she and Mr. Bustos stayed together at a hotel for three days, and due to adverse weather they did not leave the hotel during their stay. She stated they went to Mr. Bustos's aunt's house on January 14, 2007, where they stayed until January 17, 2007, when Mr. Bustos left the house and was arrested. At the second trial, Mr. Bustos's father testified, merely confirming Mr. Bustos

was born in Mexico in 1977, came to the United States in 1989, attended school in the United States, and his grandmother's surname was "Toledo."

### III. Issue: Jury Verdict Forms

### A. Jury Instructions

At the beginning of both trials, the district court read the opening instructions to the jury, explaining that Mr. Bustos "pleaded not guilty and is presumed innocent," and "may not be found guilty by you unless ... you unanimously find that the government has proved his guilt beyond a reasonable doubt."[3] R., Vol. 1, Doc. 59 at 2; Doc. 85 at 2; Vol. 4 at 17; Vol. 8 at 11. The district court further instructed, "I remind you that the defendant is presumed innocent and it is the government that must prove the defendant's guilt beyond a reasonable doubt." R., Vol. 1, Doc. 59 at 3; Doc. 85 at 3.

Similarly, prior to the jury's deliberations, the district court read the closing instructions, which reiterated principles regarding Mr. Bustos's presumption of innocence, the government's burden of proof, and the standard of reasonable doubt required for a guilty verdict. For instance, one closing

---

[3] Regarding the verdict forms issue presented, we consider the jury instructions used at both trials only for the purpose of determining whether the jury verdict forms used constituted plain error, and we do not otherwise consider the content or substance of the jury instructions.

instruction used in both trials stated, in part:

> The government has the burden of proving the defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

R., Vol. 1, Doc. 59 at 8; Doc. 85 at 8; Vol. 6 at 260; Vol. 9 at 199. Other closing instructions similarly instructed the jury, stating, "[y]ou are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged," and "[t]he defendant is presumed to be innocent of the crime charged." R., Vol. 1, Doc. 59 at 15, 18; Doc. 85 at 15, 18. When instructing the jury on the essential elements of each offense charged, the district court instructed: "[t]o find the defendant guilty of this crime you must be convinced that the United States has proved each of the following [elements] beyond a reasonable doubt ...." R., Vol. 1, Doc. 59 at 32; Doc. 85 at 23, 29. In instructing the jury in reaching a verdict, the district court instructed:

> If you find from the evidence in this case and under these instructions, beyond a reasonable doubt, that the defendant, Abel Bustos, is guilty of any of the crimes charged against him in this case, then you should find the defendant guilty ....

> If, however, you do not so find, or if you entertain a reasonable doubt as to the guilt of the defendant, Abel Bustos, as to any or all of the crimes charged against him, then you should find the defendant Abel Bustos not guilty ....

> The court will furnish verdict forms for your use.

R., Vol. 1, Doc. 59 at 40; Doc. 85 at 35. Finally, regarding the jury's

deliberations, it instructed: "[y]ou must decide whether the government has proved the defendant guilty beyond a reasonable doubt." R., Vol. 1, Doc. 59 at 41; Doc. 85 at 36.

### B. Jury Verdict Forms

The jury verdict form used in the first trial on Count 5 read as follows:

### VERDICT FORM - COUNT FIVE

We the jury, duly impaneled and sworn in the above case, unanimously find beyond a reasonable doubt as follows as to Count Five of the Indictment:

### Count Five

On or about the 17th day of January 2007, in the Northern District of Oklahoma, Abel Bustos, a/k/a/ "Gavino Toledo," defendant herein, then being an alien illegally and unlawfully in the United States, did knowingly possess in or affecting commerce, a firearm or ammunition, to wit:

1. One Smith and Wesson, Model SW40VE, .40 S&W caliber, pistol, serial number PDV6436;

2. Thirteen rounds, Remington Peters, .40 S&W caliber, JWC ammunition,

in violation of Title 18, United States Code, Section 922(g)(5).

NOT GUILTY ___                          GUILTY ___

R., Vol. 1, Doc. 57. The jury verdict forms used at the second trial, on Counts 1 and 3, were framed in a similar fashion, as follows:

-10-

## VERDICT FORM - COUNT ONE

We the jury, duly impaneled and sworn in the above case, unanimously find beyond a reasonable doubt as follows as to Count One of the Indictment:

## Count One

On or about the 17th day of January 2007, in the Northern District of Oklahoma, Abel Bustos, a/k/a "Gavino Toledo," defendant herein, did knowingly and intentionally possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(viii).

NOT GUILTY ___                                    GUILTY ___

## VERDICT FORM - COUNT THREE

We the jury, duly impaneled and sworn in the above case, unanimously find beyond a reasonable doubt as follows as to Count Three of the Indictment:

## Count Three

On or about the 17th day of January 2007, in the Northern District of Oklahoma, Abel Bustos, a/k/a "Gavino Toledo," defendant herein, did knowingly possess a firearm, to wit, a Smith and Wesson, Model SW40VE, .40 S&W caliber, pistol, serial number PDV6436 in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, possession with intent to distribute methamphetamine as charged in Count One above, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

NOT GUILTY ___                                    GUILTY ___

R., Vol. 1, Docs. 86-87. Mr. Bustos did not raise an objection to the jury verdict forms at trial.

-11-

C.  Discussion

In his first issue on appeal, Mr. Bustos contends the district court committed plain error in providing the jury with these verdict forms, which he claims conditioned "a not guilty verdict on a unanimous finding beyond a reasonable doubt."  Apt. Br. at 8.  In support, he explains that because "the spaces for recording a not guilty verdict followed after the declaration of a verdict beyond a reasonable doubt," it created "a reasonable likelihood that the jury applied the wrong standards."  *Id*. at 6.  Specifically, he suggests the presumption of innocence was negated or destroyed and the burden of proof shifted because it appeared he had to prove his own innocence beyond a reasonable doubt.  In making his plain error argument, Mr. Bustos contends, without further explanation or detail, that the jury verdict form errors affected his substantial rights by determining the outcome of the case and struck "directly at the fairness, integrity, and public reputation of the proceedings."  *Id*. at 6.

"We review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case."  *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) (quotation marks and citations omitted).  Therefore, we review de novo whether a jury was misled on the applicable law.  *See*

-12-

*Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1123 (10th Cir. 2004). With respect to individual instructions, "[w]e review the district court's decision to give or to refuse a particular jury instruction for abuse of discretion." *Bedford*, 536 F.3d at 1152. Generally, "[w]e review verdict forms under the same abuse of discretion standard we apply to jury instructions," *United States v. Stiger*, 413 F.3d 1185, 1190 (10th Cir. 2005) (quotation marks and citation omitted), and will reverse only if we have "substantial doubt that the jury was fairly guided," *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994) (quotation marks and citation omitted). However, in this case, because Mr. Bustos did not raise his objections to the verdict forms at trial, we review them for plain error. *See United States v. LaVallee*, 439 F.3d 670, 684 (10th Cir. 2006). To satisfy this standard, Mr. Bustos must show: (1) an error; (2) that is plain; (3) which affects his substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Zapata,* 546 F.3d 1179, 1190 (10th Cir. 2008), *cert. denied*, ___ S. Ct. ___, 2008 WL 4905459 (Dec. 15, 2008) (No. 08-7263). The elements in establishing plain error are conjunctive, and only "[i]f all four prongs are satisfied, ... may [we] then exercise our discretion to notice the forfeited error." *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 (10th Cir. 2004) (quotation marks and citation omitted).

In analyzing the third prong on whether the alleged error affected a

-13-

substantial right, the defendant must show the error was "prejudicial," so that the error "must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). Stated another way, the defendant must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004) (quotation marks and citation omitted). Similarly, we have held a defendant cannot satisfy the fourth prong – that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings – if there is overwhelming and essentially uncontroverted evidence of the defendant's guilt as to the charged crime. *See United States v. Brown*, 400 F.3d 1242, 1254 (10th Cir. 2005). In applying these principles, "we generally presume that juries follow courts' instructions," *United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008), and "do not weigh conflicting evidence or make credibility determinations as these are exclusively functions of the jury," *Zapata*, 546 F.3d at 1188.

In this case, we agree the verdict forms should have been better constructed to eliminate any question, as raised here, that the applicable standard of reasonable doubt and burden of proof might somehow be applied to a finding of "not guilty," rather than only to a finding of "guilty." However, even if plain error occurred in their construction, Mr. Bustos has failed to establish the third

prong of the plain error analysis to show such an error affected his substantial rights. This is because a review of the record establishes the juries at both trials were presented with opening and closing jury instructions that clearly and repeatedly articulated the presumption of innocence principle and explained that the applicable standard of reasonable doubt and the government's burden of proof applied only to a finding of guilty, and not, as argued, to a "not guilty" finding.

As a result, the jury instructions more than sufficiently stated the governing law and provided the jury with an intelligent, meaningful understanding of the applicable issues and standards, making it improbable the jury at either trial applied the wrong standard or burden based on any faulty construction of the disputed jury verdict forms. *See United States v. Cerrato-Reyes*, 176 F.3d 1253, 1262 (10th Cir. 1999) (holding jury was not misled by one instruction which failed to clearly state the government's burden of proof beyond a reasonable doubt, in view of the instructions as a whole, which repeatedly informed the jury that the government had the burden to prove the defendant's guilt beyond a reasonable doubt, and there was no indication the burden of proof ever shifted to the defendant), *abrogation on other grounds recognized by United States v. Overstreet*, 51 F.App'x 838, 841 n.1 (10th Cir. Nov. 20, 2002) (unpublished op.). Thus, Mr. Bustos has not shown, nor does the record disclose, any prejudice caused by the jury verdict forms, as it is evident they did not affect the outcome

of the district court proceedings. *See Olano*, 507 U.S. at 734. In other words, he has not shown the result of either trial would have been different but for the allegedly defective jury verdict forms. *See Dominguez Benitez*, 542 U.S. at 81-82.

Our conclusion is bolstered by the evidence presented at both trials. While we need not address the fourth prong of the plain error test because all four prongs must be satisfied to establish plain error, we do so for Mr. Bustos's benefit to eliminate any doubt as to the serious allegations associated with his claimed jury verdict form error. In this case, the record shows overwhelming and essentially uncontroverted evidence supported the juries' findings that Mr. Bustos was guilty of the counts charged, which negates his allegation that the verdict form error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. This is especially relevant with respect to Count 5, on which Mr. Bustos was convicted in the first trial. During that trial, Mr. Bustos admitted he was an illegal alien and possessed the firearm when he placed it under the passenger's seat and stipulated the firearm was manufactured outside the state and traveled in interstate commerce. His admissions and stipulation are sufficient to meet the elements necessary for the crime charged under 18 U.S.C. § 922(g)(5) for being an illegal alien knowingly in possession a firearm in or affecting interstate commerce. Thus, even if we disregard Mr. Bustos's own

admissions during his police interview that he was an illegal alien and the firearm belonged to him, overwhelming and uncontroverted evidence supported the charge in Count 5. For this reason, we conclude any error in the jury verdict form on Count 5 did not seriously affect the fairness, integrity, or public reputation of his first trial. *See Brown*, 400 F.3d at 1253-54.

The same is true with respect to the second trial and Counts 1 and 3, concerning his possession of at least fifty grams of a substance containing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii), and possession of a firearm and ammunition in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Uncontroverted evidence established the vehicle Mr. Bustos occupied contained more than two ounces of methamphetamine, together with digital scales, loaded firearms, and ammunition located under the driver's and passenger's seats – none of which Mr. Bustos denied were found in the vehicle. Mr. Bustos also stipulated at the second trial that the pistol and thirteen rounds of .40-caliber ammunition found under the passenger's seat were possessed by him and that the plastic baggie found in the vehicle specifically held 52.92 grams of a substance containing a detectable amount of methamphetamine. In addition, Mr. Bustos did not deny he had on his person $810 in cash and a fake identification card containing a false name. Two officers with extensive training and expertise in

narcotics investigations also testified that, based on their training and expertise, it was their opinion that possession of more than two ounces of methamphetamine, together with digital scales, firearms, false identification to avoid detection, and a large amount of cash in the amount of $810, indicated a scheme to illegally distribute drugs.

In convicting Mr. Bustos of Count 1, it is evident the jury credited this evidence, as well as the officers' testimony that he made incriminating admissions during his police interview when he stated he and Epifanio Bustos were in the drug business together; the drugs found in the vehicle belonged to them; they purchased approximately two ounces of methamphetamine a couple of days prior to their arrest; they typically packaged and sold their drugs in $20 baggies; the semi-automatic pistol found under the front passenger's seat belonged to him; and, at the time of the traffic stop, both he and Epifanio placed their guns underneath their seats. Similarly, in support of Count 3, it is clear the firearm Mr. Bustos admitted to possessing, located under the front passenger's seat, was in close proximity to the drugs and drug scale found in the back seat of the vehicle. It was also loaded and situated where it was readily accessible to Mr. Bustos, as admitted by him when he explained he hid it under his seat.

It is also evident from the testimony of the officers interviewing Mr.

Bustos, as well as his own testimony, that he had sufficient comprehension of both English and Spanish, thereby dispelling any inference he did not understand his *Miranda* rights or what he was asked and answered when he made his incriminating admissions. A review of the record also shows the government's overwhelming inculpatory evidence was essentially uncontroverted, other than by Mr. Bustos's own self-serving statements, as well as his girlfriend's and father's testimony, which offered little exculpatory evidence. Obviously, the jury discredited their testimony when it found Mr. Bustos guilty of both the drug trafficking and firearm charges.

Because overwhelming and essentially uncontroverted evidence in the record establishes Mr. Bustos's guilt as to the charged crimes in Counts 1 and 3, we conclude any error in the jury verdict forms did not seriously affect the fairness, integrity, or public reputation of his second trial. *See Brown*, 400 F.3d at 1253-54. For these reasons, we conclude Mr. Bustos's arguments fail to support his plain error claim on the issue of the verdict forms.

IV.  Second Issue:  Count 3

A.  Jury Instructions on Firearm in Furtherance of Drug Trafficking Crime

During the second trial, Mr. Bustos's counsel took up the issue of whether being an illegal alien in possession of a firearm was relevant to Count 3 for being in possession of a firearm in furtherance of a drug trafficking crime.  He first filed a motion in limine requesting the government be precluded from eliciting testimony or referencing Mr. Bustos's status as an illegal alien.  He also specifically objected to two instructions, the first of which stated:  "Possession of a Firearm or Ammunition by an Illegal Alien:  You are instructed as a matter of law that it is a violation of Federal law for an alien who is illegally and unlawfully in the United States to possess a firearm or ammunition."  R., Vol. 1, Doc. 85 at 32; Vol. 9 at 196-97; Apt. Br. at 15.  The second instruction objected to by Mr. Bustos stated:

Uncharged Conduct

The defendant is on trial only for the offenses charged in the Indictment.

Evidence of the Defendant's immigrant status should not be considered by you except as it may help you in assessing the status of the possession (legitimate or illegal) of the firearm in your determination of whether the alleged possession of a firearm furthered, advanced, or helped advance a drug trafficking crime.

R., Vol. 1, Doc. 85 at 33; Vol. 9 at 196-97; Apt. Br. at 14.  These instructions

were used in conjunction with a *Basham*-related instruction,[4] which stated, in

part:

> Essential Elements of the Offense Charged in Count Three
>
> The defendant is charged in Count Three with a violation of 18 U.S.C. Section 924(c)(1)(A)(i).
>
> This law makes it a crime to possess a firearm in furtherance of a drug trafficking crime.
>
> To find the defendant guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:
>
> *First*:      the defendant committed the crime of possession with intent to distribute of a controlled substance, as charged in Count One of the indictment, which is a drug trafficking crime;
>
> *Second*:      the defendant possessed a firearm in furtherance of this crime.
>
>      ....
>
> Mere presence of a firearm at the scene is not enough to find possession in furtherance of a drug trafficking crime, because the firearm's presence may be coincidental or entirely unrelated to the underlying crime. Some factors that may help in determining whether possession of a firearm furthers, advances, or helps advance a drug trafficking crime include, but are not limited to:
>
> 1. the type of criminal activity that is being conducted;
> 2. accessibility of the firearm;
> 3. the type of firearm;
> 4. whether the firearm is stolen;
> 5. *the status of the possession (legitimate or illegal)*;

---

[4] *See United States v. Basham*, 268 F.3d 1199, 1206-08 (10th Cir. 2001).

-21-

6. whether the firearm is loaded;
7. the time and circumstances under which the firearm is found; and
8. proximity to drugs or drug profits.

R., Vol. 1, Doc. 85 at 29-30; Apt. Br. at 14-15 (emphasis added).

While it is evident from the record that the district court considered Mr. Bustos's jury instruction objection, it did not formally rule on his objection but expressly addressed Mr. Bustos's motion in limine requesting the government be precluded from eliciting testimony or referencing Mr. Bustos's status as an illegal alien. It denied the motion on grounds his illegal alien status was relevant, not unreasonably prejudicial, and important in understanding the entire context of the charged offense. We construe this, as well as the district court's use of the contested instructions, as an implicit denial of his objection to those instructions. *See Hill v. Smithkline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004).

## B. Discussion

In his second issue on appeal, Mr. Bustos contends the district court abused its discretion at the second trial by using these jury instructions, arguing they required the jury to consider his "immigration status as relevant to the legitimacy of the firearm possession for the purposes of the § 924(c) count." Apt. Br. at 1. Specifically, he suggests the instructions to which he objected were impermissibly used in conjunction with the *Basham* instruction and constituted error because

possession of a firearm by an illegal alien was not salient to the issue of whether his possession was in furtherance of drug trafficking, and no evidence showed a possible connection between drug trafficking and his illegal possession of a firearm. He argues the contested instructions were prejudicial because they misled or influenced the jury into affording greater weight to the factor of illegal possession of a firearm by an illegal alien, and its prejudicial effect is evident, given his testimony he had no involvement with drugs and only possessed the firearm long enough to secrete it immediately after learning of its presence which created grave doubt as to the jury's verdict. For these reasons, he suggests the erroneous instructions had a substantial influence on the outcome of the trial.

As previously discussed, "[w]e review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *Bedford*, 536 F.3d at 1152. In turn, "[w]e review the district court's decision to give or to refuse a particular jury instruction for abuse of discretion." *Id.* We have held an erroneous instruction requires a new trial unless it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Smith*, 534 F.3d 1211, 1220 (10th Cir. 2008) (quoting *United States v. Luke-Sanchez*, 483 F.3d 703, 705 (10th Cir. 2007)), *cert. denied*,

___ S. Ct. ___, 2008 WL 4734535 (Dec. 1, 2008) (No. 08-6960).

The statute on which Mr. Bustos's Count 3 conviction rests, and his appellate issue arises, states, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A). We have held the "in furtherance of" element requires the government to show possession of the firearm furthered, promoted, or advanced the drug trafficking crime, *see United States v. Jenkins*, 313 F.3d 549, 559 (10th Cir. 2002), and therefore, it must demonstrate a direct connection between the firearm and drug offense*, see Basham*, 268 F.3d at 1207. In the context of drug distribution offenses, we view firearms as "tools of the trade" in the distribution of illegal drugs, *see United States v. Hall*, 473 F.3d 1295, 1304 (10th Cir. 2007), but in *Basham*, we cautioned that "[m]ere presence of a firearm at the scene is not enough to find possession in furtherance of a drug trafficking crime, because the firearm's presence may be coincidental or entirely unrelated to the underlying crime," 268 F.3d at 1206. Instead, we held the government's burden may be met by introducing evidence the defendant intended to keep the firearm available for use during a drug transaction and that such intent may be

established by circumstantial evidence. *See id.* at 1208. We then set out a list of non-exhaustive factors for determining whether a firearm was used in furtherance of a drug trafficking crime, including: (1) the type of drug activity being conducted; (2) accessibility of the firearm; (3) the type of weapon; (4) whether the weapon was stolen; (5) *the status of the possession (legitimate or illegal)*; (6) whether the gun is loaded; (7) the gun's proximity to drugs or drug profits; and (8) the time and circumstances under which the gun was found. *See id.* at 1207-08. We determined these non-exhaustive factors are relevant and helpful to a jury in attempting to discern the defendant's intent in possessing a weapon. *See id.* at 1208.

To the extent Mr. Bustos is contesting the use of the illegal status of possession factor applied in the *Basham* instruction, we note that not only this circuit, but other circuits have determined this is a relevant factor in determining if a firearm was used in furtherance of a drug trafficking crime. *See United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002); *United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002); *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001); *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000) (en banc). While this circuit has not had occasion to specifically address its relevance to the crime charged, the Fourth Circuit has, and, in so doing, determined the fact a defendant was a felon in illegal possession of a firearm was

-25-

relevant in determining whether he possessed the firearm in furtherance of a drug trafficking crime. *See Lomax*, 293 F.3d at 706. While it provided no further discussion on this point, we agree with its conclusion and continue to hold illegal firearm possession is a relevant factor in determining whether possession of a firearm or ammunition was in furtherance of a drug trafficking crime. We base our conclusion, in part, on the fact that if possession of the firearm is illegal, then it follows that a reason may exist as to why a defendant would nevertheless possess it in violation of the law and in the face of stiff penalties assessed for such illegal possession. *See* 18 U.S.C. § 924(a)(2) (providing one who violates 18 U.S.C. § 922(g) for illegal possession of a firearm shall be imprisoned for not more than ten years). It is reasonable to conclude possession of a firearm in furtherance of a drug trafficking crime could be one explanation as to why a defendant might risk possessing a firearm, even if such possession is illegal and potentially subjects the possessor to a penalty of up to ten years imprisonment.

Consequently, the illegal status of a defendant's firearm possession has probative value in terms of determining if that possession was in furtherance of a drug trafficking crime. For this reason, we conclude the district court did not abuse its discretion by including the status of possession factor as one of the factors in the *Basham* jury instruction. In addition, the district court also did not abuse its discretion in using the other contested jury instructions relating to Mr.

-26-

Bustos's illegal alien status. The district court's instruction to the jury that it is a violation of law for an illegal alien to possess a firearm or ammunition was merely for the purpose of apprising the jury of the applicable law for the purpose of assessing the status of possession factor. This instruction was appropriately tempered with another jury instruction explaining Mr. Bustos's immigrant status should not be considered except as it may help in assessing the legal or illegal status of his firearm possession in determining whether his possession furthered a drug trafficking crime. As previously stated, "we generally presume that juries follow courts' instructions," *Taylor*, 514 F.3d at 1100, and nothing in the record or Mr. Bustos's argument convinces us otherwise.

For these reasons, we conclude the district court did not abuse its discretion in using the contested instructions. In so concluding, we disagree with Mr. Bustos that his testimony – that he had no involvement with drugs and only possessed the firearm long enough to secrete it – is sufficient to show the prejudicial effect of those instructions. Rather, as noted, it is evident the jury discredited his self-serving statements and that overwhelming evidence supported the jury's verdict on Count 3, where Mr. Bustos admitted possessing a loaded firearm located under his seat which was readily accessible to him and in close proximity to the drugs and drug scale in the back seat of the vehicle. For this reason, even if the use of the contested instructions was erroneous, it appears

"beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Smith*, 534 F.3d at 1220.


## V. Conclusion

For the reasons provided herein, we **AFFIRM** Mr. Bustos's convictions.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge